14265. HANEY, CHANDLER & COMPANY *v.* JOHNSON & COMPANY.

In the trial of this action of trover for the recovery of a bale of cotton, the evidence was such as to raise issues for the jury as to the ownership of the cotton as between plaintiffs and defendants. The court therefore erred in directing a verdict for the defendants.

DECIDED DECEMBER 7, 1923.

Trover; from Cherokee superior court—Judge Blair. December 12, 1922.

Haney, Chandler & Company brought trover against J. H. Johnson & Company for a bale of cotton, which was deposited in the warehouse of the defendants, and to which the plaintiffs claimed title under a bill of sale from C. W. Bates, dated June 26, 1921. The evidence seems undisputed that this bale had been delivered in the fall of 1920 to the defendants by the wife of Bates; that they extended credit to her on the faith of its security; that, as merchants rather than warehousemen, they gave no warehouse receipt; that, acting under the authority originally given by Mrs. Bates and under the instructions of J. V. Smith, the agent of the landlord renting the land on which the cotton was made, they sold this bale on June 24, 1921, prior to its attempted transfer by C. W. Bates to the plaintiffs; and that the proceeds of this sale by the defendants were applied in the payment of advances made to Mrs. Bates and to the claim of Smith as agent for the landlord. The evidence is in dispute as to whether Bates or his wife rented from Smith's wife the land on which the cotton was raised. It appears that Bates was in feeble health during most of the crop year of 1920, when the bale of cotton was made, and died in August or September, 1921, before the trial; and that Mrs. Bates had died during the latter part of 1920. The principal questions of fact argued by counsel with reference to the determination of whether the evidence raised any issue for the jury may be reduced to the following: 1. Did Bates or Mrs. Bates rent the land from the owner, Mrs. Smith, or her husband, J. V. Smith, acting for her; and who was the owner of the cotton at the time it was turned over to the defendants by Mrs. Bates; and consequently, did Bates or Mrs. Bates have authority to control the same? 2. If Mrs. Bates was not the renter of the land and the owner of the cotton in the fall of 1920, when she pledged the cotton for advances made by the

defendants, did she have authority, as agent acting for her husband, so to control and subject it?

*Anderson & Roberts,* for plaintiffs.

*Wood & Vandiviere,* for defendants.

JENKINS, P. J. (After stating the foregoing facts.) 1. The defendants, claiming under Mrs. Bates, assert that there was no competent evidence showing that Bates rented the land, and contend that Mrs. Bates was unmistakably the tenant of the land and owner of the cotton, and that the evidence therefore demanded a finding in their favor. However, the evidence of both Mrs. Kate Durham, a daughter of Mr. and Mrs. Bates, and of Crawford Garrison, their son-in-law, was to the effect that the land had been rented by Bates and not Mrs. Bates. While the evidence discloses that the daughter was not present at the time of the renting, there is nothing to indicate, either on direct or cross-examination, that the son-in-law was absent at the time the contract was entered upon; and both the daughter and the son-in-law swore positively that Mr. Bates, under whom the plaintiffs claim, rented the land. The evidence of the son-in-law, while thus silent as to whether he was present at the time the contract was actually entered upon, does state that Mr. Bates went over to the farm and inspected it in company with the witness, for the purpose of renting it; and both of these witnesses testify to various acts of Mr. Bates indicating his own personal control over the rented premises, such as might be taken in support of the theory that he himself was the tenant. In view of this testimony, and in view of the fact that each of these witnesses swore positively to the rental of the premises by Mr. Bates as a fact, this court cannot say, as a matter of law, that their testimony is manifestly based upon mere hearsay or constitutes mere conclusions of the witnesses. On the other hand, J. V. Smith swore that he, acting for his wife, the owner, rented the land to Mrs. Bates. It cannot be said that the evidence upon this question was not in conflict.

2. Even conceding that Bates was the tenant of the land and owner of the cotton, the evidence seems undisputed that, in his enfeebled condition from a cancer, during the year 1920, Mrs. Bates, with his knowledge and consent, was handling most of his affairs and acting as his recognized agent in all the farm transactions, including the disposition and sale of the crops. Since there

is no dispute that the defendants held the cotton under their claim of security for advances procured by Mrs. Bates, it would seem, under the evidence, that the defendants would have to be treated as lawful bailees of the property held as collateral for their debt; except for the evidence of the daughter and the son-in-law of the Bates to the effect that in June, 1921, while their father was yet alive, they, acting for him, went to the defendants and advised them that they could apply only one of the two bales then stored upon the defendants' indebtedness, and that the other bale, the one in dispute, was to go to the plaintiffs; and that the defendants agreed that "we could get the bale of cotton any time after that week," and that "Haney [referring to plaintiffs] could get the bale any time after that week." This conversation seems not to have been denied by the defendants; and such admissions might have authorized the jury to find against the defendants' evidence that the bale in question had been deposited as claimed and was being held as collateral security for their indebtedness.

<i>Judgment reversed. Stephens and Bell, JJ., concur.</i>